UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-mj-8187-RMM

UNITED STATES OF AMERICA,

vs.

ANTHONY RAUL DEL VALLE,
a/k/a "QT,"

Defendant.
_____/

FILED BY ____SP____ D.C.
Apr 17, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?   NO

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   NO

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   NO

4. Did this matter involve the participation of or consultation now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   NO

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  *Shannon O'Shea Darsch*
SHANNON O'SHEA DARSCH
Assistant United States Attorney
Florida Bar No. 68566
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1027
Shannon.Darsch@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Anthony Raul Del Valle,<br>a/k/a "QT,"<br><br>*Defendant(s)* | )<br>)<br>) Case No. 24-mj-8187-RMM<br>)<br>)<br>) |

FILED BY ___SP___ D.C.
Apr 17, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 10, 2024__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1) and (b)(1)(C) | Possession with the intent to distribute a controlled substance (fentanyl) |
| 18 USC § 924(c)(1)(A)(i) | Possession of a firearm in furtherance of a drug trafficking crime |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

TFO Daniel Montoute-Howard, DEA
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1.

Date: 4/16/24

_____
*Judge's signature*

City and state: West Palm Beach, FL          Hon. Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

I, Daniel Montoute-Howard, being duly sworn do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a deputized Task Force Officer ("TFO") with the United States Drug Enforcement Administration ("DEA"). As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516 and Title 21, United States Code. As part of my duties and responsibilities, I have investigated violations of federal laws, including those pertaining to firearms, narcotics, and fraud. I have served as a TFO with DEA since April 2023.

2. I have been a sworn police officer with the Boynton Beach Police Department ("BBPD") since December 24, 2011. I am currently assigned to the BBPD Violent Crimes Task Force. I have successfully completed the Criminal Justice Standards and Training Police Academy and am certified by the Criminal Justice Standards and Training Commission as a Law Enforcement Officer. I have received specialized training in Narcotic Identification, Street Level Drug Investigations, Long Term Narcotics Investigations, Street Crimes and Surveillance, Florida Narcotics Officer's Conferences, Drug Abatement Techniques and DEA's Task Force Officer School. I have received numerous hours of in-house training in search and seizure. I have conducted and participated in numerous narcotic and drug trafficking investigations. I have conducted investigations of, and have been instructed in, investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, money laundering, maintaining places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21,

1

United States Code Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively.

3. Through investigations and training, I have become familiar with narcotic trafficker's methods of operation including the distribution, storage, and transportation of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering. My training and experience as a police officer with the BBPD and as a TFO with DEA, along with conversations with other Federal, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

4. This affidavit is made in support of a Criminal Complaint and Arrest Warrant charging **Anthony Raul DEL VALLE, a/k/a QT,** (hereinafter "DEL VALLE") with possession with the intent to distribute a controlled substance (fentanyl), in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C); and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. The limited purpose of this affidavit is to establish probable cause for the offenses described above. Accordingly, this affidavit does not set forth every fact that is known to me, or other law enforcement officers.

## PROBABLE CAUSE

### I. Introduction

6. After the fatal overdose of two victims due to suspected fentanyl ingestion, DEA, the Lantana Police Department ("LPD"), and the BBPD began an investigation to identify the source who distributed fentanyl to the victims (hereinafter "Victim 1" and "Victim 2"). Through investigation, law enforcement learned that DEL VALLE distributed suspected fentanyl capsules

2

to Victim 1 and Victim 2, on April 8, 2024, at their residence located in Lantana, Florida, in Palm Beach County, in the Southern District of Florida (hereinafter "residence"). Victim 1 and Victim 2 died on that same day. Further investigation determined that Victim 1, Victim 2, and a third individual (hereinafter "Victim 3") lived together at the residence. Victim 3 ultimately agreed to cooperate with law enforcement in the investigation of DEL VALLE.

7. Thereafter, law enforcement conducted a controlled operation on April 10, 2024, where DEL VALLE arrived at the residence to sell ten pills of suspected fentanyl to Victim 3. During the operation, DEL VALLE was taken into custody after a brief pursuit. DELL VALLE was in possession of a loaded, stolen firearm and ten blue pills labeled "M-30." The pills field tested positive for fentanyl.

## II. Fatal Overdose of Victim 1 and Victim 2

8. On April 8, 2024, the LPD responded to a 911 call at the residence regarding Victim 1 and Victim 2 being unresponsive and unconscious. Palm Beach Fire Rescue arrived on scene and pronounced both Victim 1 and Victim 2 deceased at 4:16 p.m.

9. Law enforcement met with Victim 3 on scene. Victim 3 stated he last observed Victim 1 and Victim 2 alive on April 8, 2024, at approximately 11:00 a.m. Thereafter, Victim 3 took a nap. When Victim 3 woke from his nap, both Victim 1 and Victim 2 were found unresponsive. Victim 3 then called 911 for assistance.

10. On the same day, LPD investigators conducted a walk through of the residence and visual inspections of Victim 1 and Victim 2. LPD located drug paraphernalia and several medication bottles throughout the residence. Victim 1 and Victim 2 were then transported to the Palm Beach Medical Examiner Office for an autopsy.

11. The Palm Beach County Medical Examiner Office located pills in the short pockets of

3

Victim 2. LPD retrieved the pills and collected twenty-five (25) blue circular pills marked "M", with a square on one side, and #30 on the other side. LPD investigated the markings on the pills and determined the markings were faded, which is indicative that the pills could be counterfeit. The pills field tested positive for fentanyl.

### III. Homicide Investigation

12. On April 9, 2024, an anonymous caller reported to LPD that an individual in a blue Honda CR-V was parked at the residence. The caller believed the individual supplied Victim 3 with narcotics. The caller further stated they observed the same vehicle in the driveway of the residence on the day of Victim 1's and 2's death. LPD responded to the scene but was unable to locate the vehicle.

13. LPD then conducted a welfare check on Victim 3 who appeared to be under the influence of a narcotic due to being unable to stand. Palm Beach Fire Rescue provided medical assistance to Victim 3 and transported Victim 3 to JFK Hospital for further medical evaluation.

14. The next day, on April 10, 2024, Victim 2's family member contacted the LPD regarding Victim 2's cellphone. After Victim 2's death, the family member took possession of the cellphone. The family member indicated that law enforcement needed to review Victim 2's cellphone because several calls and text messages were made to a contact listed as QT, with the phone number ending in 3341. The family member stated that some of the calls were made immediately before Victim 1's and 2's death. Based on the calls and text messages, the family member believed that QT was the drug dealer for Victim 1, Victim 2, and Victim 3. The family member then provided LPD with Victim 2's cellphone for further investigation.

### IV. Victim 3's Cooperation with LPD and DEA

15. On April 10, 2024, LPD contacted Victim 3 for further information. Victim 3 indicated

4

that QT was Victim 2's drug dealer. QT sold "Roxies" (street slang for the prescription drug Roxicodone, a brand of Oxycodone Hydrochloride) to Victim 2 for several years. Victim 3 stated that Victim 1 and Victim 2 abused their prescriptions pills and contacted QT to purchase more pills. Victim 3 stated that QT was at the residence prior to Victim 1's and Victim 2's death.

16. Victim 3 further indicated that, following the death of Victim 1 and Victim 2, on April 9, 2024, due to mourning his loss, Victim 3 contacted QT to purchase Xanax from him. QT arrived at his residence in the blue Honda CR-V. Victim 3 indicated that he purchased three Xanax bars from QT and consumed them prior to LPD conducting a welfare check on him.

17. Victim 3 then agreed to participate in a controlled purchase of pills from QT.

## V. DEA & LPD Controlled Purchase from DEL VALLE A/K/A QT

18. On April 10, 2024, DEA, LPD, and the BBPD conducted a controlled operation to purchase ten (10) "Roxies" from QT. Prior to the controlled buy, Victim 3 conducted two, recorded calls to QT. Victim 3 requested ten (10) "Roxies." During the call, QT advised Victim 3 that Victim 2 owed QT $2,800. Victim 3 informed QT he did not have $2,800. QT then threatened Victim 3 that he was messing with people worse than QT and told Victim 3 to find Victim 2. Thereafter, on a second controlled call with QT, Victim 3 told QT that Victim 2 had died. QT then agreed to meet at the residence that same day to conduct the narcotics transaction.

19. Victim 3 was then provided with $200 of LPD Investigative funds and an audio and video recording device. At this time, a neighbor of the residence informed LPD an individual had arrived at the residence. The neighbor's surveillance footage showed an individual at the residence in a 4-door Honda. Victim 3 confirmed the individual was QT.

20. Victim 3 then arrived at the residence with the recording device. Unbeknownst to Victim 3, QT was already inside the residence. QT told Victim 3 that he lied about Victim 2's death.

5

Victim 3 informed QT that Victim 1 and Victim 2 were both dead. QT then immediately asked Victim 3 about Victim 2's bank card and the password. The following conversation occurred:

| | |
|---|---|
| QT: | "Ok so why do you keep on lying for" |
| Victim 3: | "Because I wanted meds" |
| QT: | "Huh" |
| Victim 3: | "Because I wanted meds" |
| QT: | "I would still come it doesn't mean you ain't got to lie to me" |
| QT: | "Inaudible this thing right here works on trust" |
| Victim 3: | "I know if you thought that [Victim 2] passed away then I didn't know how I was going to get the money to you, then I just needed to get something cause I [] lost the only two family members that I had" |

21. Thereafter, QT told Victim 3 to empty his pockets. QT took Victim 3's $200 of Investigative Funds, Victim 2's debit card, and Victim 3's pocketknife. QT and Victim 3 then exited the residence. At this time, law enforcement attempted to apprehend QT, but he unsuccessfully fled on foot and jumped two fences upon observing law enforcement. Law enforcement took QT into custody, and he identified himself as Anthony Raul DEL VALLE. DEL VALLE's identification was confirmed through law enforcement databases.

22. In DEL VALLE's possession at the time of his arrest, he had the following on his person: two (2) Apple iPhones; a set of keys, including a Honda key; Victim 2's debt card; Victim 2's checkbook; $200 of LPD Investigative Funds; $4,198; and two (2) clear plastic baggies, containing a total of ten (10) blue circular pills marked "M", with a square on one side and the #30 on the other side. During the recorded call, Victim 3 had requested that DEL VALLE sell Victim 3 ten (10) pills. The pills field tested positive for fentanyl and are substantially similar to the pills located on Victim 2 by the Medical Examiner Office.

23. Additionally, DEL VALLE was in possession of a stolen Smith & Wesson M&P .40 caliber semi-automatic handgun, loaded with eight (8) rounds, including one (1) round in the

6

chamber. The firearm was located in the front waistband of DEL VALLE.

24. After DEL VALLE's arrest, Victim 3 informed LPD that when he entered his residence, he observed the rear laundry room door open. Victim 3 was then approached by DEL VALLE. Victim 3 stated he did not invite DEL VALLE inside his residence. Victim 3 indicated that DEL VALLE told Victim 3 to empty his pocket and DEL VALLE took $200, his wallet, Victim 2's debit card, and his pocket knife. Victim 3 indicated he was in fear for his life and felt threatened by DEL VALLE. Victim 3 further stated that DEL VALLE pulled out Victim 3's knife and told him to keep moving while making a hand movement with the blade of the knife.

## CONCLUSION

25. Based on the facts and information set forth in this affidavit, your affiant respectfully submits that there is probable cause to believe DEL VALLE committed the criminal offense of possession of a controlled substance (fentanyl), in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(c); and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

Daniel Montoute-Howard
Task Force Officer
Drug Enforcement Administration

Sworn and Attested to me by Applicant by Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d) and 4.1 this _18_ day of April 2024.

RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Anthony Raul Del Valle, a/k/a "QT"

**Case No**: _____

Count #: 1

Possession with the intent to distribute a controlled substance (fentanyl)

21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)
* **Max. Term of Imprisonment:** 20 Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 Years to Life
* **Max. Fine:** $1,000,000

Count #: 2

Possession of a firearm in furtherance of a drug trafficking crime

18 USC § 924(c)(1)(A)(i)
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 Years
* **Max. Supervised Release:** 5 Years
* **Max. Fine:** $250,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.